UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**IRAIDA LIMA-RIVERA, et al.,**
**Plaintiffs**

v.                                                                                                          CIVIL NO. 04-1798(DRD)

**UHS OF PUERTO RICO, INC., et al.,**
**Defendants**

**OPINION AND ORDER**

Pending before the Court is co-defendant Hospital Interamericano de Medicina Avanzada (HIMA) *Motion to Dismiss* (Docket No. 22). Basically, HIMA, without submitting to the jurisdiction of the Court, moves to dismiss under Rule 12(b)(1), Fed.R.Civ.P., the claims against it alleging that plaintiff has failed, based on the pleadings, to show that federal jurisdiction exists as to said co-defendant and hence all supplemental jurisdiction claims should also be dismissed. For the reasons stated below, HIMA's *Motion to Dismiss* (Docket No. 22) is hereby **DENIED**.

**FACTUAL BACKGROUND**

On May 1, 2003, plaintiff, Iraida Lima-Rivera, eighteen years of age and thirty five weeks pregnant, was admitted to the Hospital San Pablo del Este (HSPE) bearing hypertension and a diagnosis of preeclampsia which is deemed, as alleged by plaintiff, as an emergency medical condition. Despite her condition, she was discharged from HSPE on May 6th 2003. However, two days later, that is, on May 8, 2003, plaintiff returned to HSPE's Emergency Room with high blood pressure, shortness of breath, in labor and again with a diagnosis of preeclampsia. A cesarean was performed on plaintiff on May 9, 2003, giving birth to a baby boy.

The newborn was transferred to HSPE regular nursery and once in said nursery allegedly presented tachypnea and evidence of hypotonia without any action being taken by hospital personnel. On May 10, 2003, the baby developed upper gastrointestinal bleeding and vomited blood,

and was transferred to the HSPE's intensive care unit. A decision was made on that same date to transfer the newborn to Hospital Interamericano de Medicina Avanzada (HIMA) arriving at said hospital at 11:55 p.m. Plaintiffs allege that on arrival the baby was described as "crucially ill r/o sepsis". Laboratory tests performed disclosed respiratory alkalosis and was placed on antibiotics and antacids. On May 12, 2003, the baby was evaluated by Dr. Jane Estachnoly who ordered a nutrition plan nevertheless, the baby remained on a tachypneic and hypoonic state. On that same date, the baby developed a cardiac arrest and was declared dead at 12:50 p.m.

## RULE 12(b)(1) MOTION TO DISMISS STANDARD

When deciding a Motion to Dismiss, the Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. Viqueira v. First Bank 140 F.3d 12, 16 (1st Cir, 1998). To resolve factual disputes bearing upon the existence of jurisdiction, a court may review the evidence including affidavits and depositions. Once a defendant files a motion contesting the Court's subject matter jurisdiction, pursuant to Federal Rule 12(b)(1), it is plaintiff's burden to establish that the Court has jurisdiction. Federal Courts are courts of limited jurisdiction. This Court has the responsibility "to police the border of federal jurisdiction". Spielman v. Genzyme Corp, 251 F.3d 1 (1st Cir., 2001).

However, the standard of review of a motion challenging jurisdiction pursuant to Rule 12(b)(1) is similar to the standard under a Rule 12(b)(6) motion to dismiss hence the Court must take "all plaintiffs' allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff". Pejepscot Indus. Park v. maine Cent. R.R., 215 F.3d 195, 197 (1st Cir. 2000). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir.1991).

The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3(1st Cir. 1996)(citations omitted); see also Berríos v. Bristol Myers Squibb Caribbean Corp., 51 F.Supp.2d 61 (D.P.R. 1999). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir.1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988)).

Therefore, in order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gooly v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988). In sum, a claim shall be dismissed under Rule 12(b)(6) **only if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief**. Conley v. Gibson, 355 U.S. at 78. (*Emphasis added.*)

However, the Court is not obligated to accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). The Court must only accept those facts that are "well pleaded," limiting its inquiry into the allegations of the complaint. Litton Indus., Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1978). In sum, the Court's focus should always be on "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." Id.; *see also* Rogan v. Menino, 175 F.3d 75 (1st Cir. 1998).

Finally, a district court's dismissal of a claim under Rule 12(b)(6) is reviewed *de novo* by the appeals court; such court "accept[s] as true all well-pleaded factual averments and indulg[es] all

reasonable inferences in the plaintiff's favor." Calderon Ortiz v. Laboy Alvarado, 300 F.3d 60, 62-63 (1st Cir. 2002); SEC v.SG Ltd., 265 F.3d 42, 46 (1st Cir. 2001). Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal shall be set aside. Calderon Ortiz, 300 F.3d at 63; quoting, Conley v. Gibson, 355 U.S. at 45-46; Aulson v. Blanchard, 83 F.3d at 3.

## LEGAL ANALYSIS

HIMA moves the Court to dismiss the instant complaint on the three different grounds, to wit, firstly, that the alleged EMTALA violations made pursuant to violation to a federal statute were incurred solely by HSPE's failure to treat plaintiff's preeclampsia condition during her last stages of her pregnancy, and its failure to stabilize her newborn baby before transferring to HIMA. Further, HIMA sustains that the complaint is devoid of an EMTALA claim against it because a simple examination of the plaintiffs' complaint, the averments are geared solely toward HSPE and its personnel. HIMA sustains that the complaint charges its personnel with medical malpractice claims occurring after the baby was transferred to said hospital. Secondly, HIMA states that the facts that gave rise to the federal claims are different from the facts supporting the local state claims against HIMA, hence there is no common nucleus of operative facts supporting plaintiffs' request for remedies within this jurisdiction, therefore the Court lacks supplemental jurisdiction to entertain claims under local state law. Finally, HIMA sustains that plaintiffs' local state law claims are time barred because the one year statute of limitations provided under the Puerto Rico Civil Code to bring forth claims related to medical malpractice had expired at the time the instant complaint was filed. The Court examines in seriatim fashion HIMA's grounds for dismissal.

At the outset, the Court notes that EMTALA was not enacted to create a medical malpractice cause of action under federal law. Correa v. Hospital San Francisco, 68 F.3d 1184, 1192 (1st Cir., 1995). EMTALA is no substitute for state law medical malpractice. Guadalupe v. Negrón-Agosto,

299 F.3d 15, 21(1st Cir., 2002)(*citing* Barber v. Hosp. Corp. of America, 977 F.2d 872, 880 (4th Cir., 1992)).  This legislation is not a federal malpractice suit.   Reynolds v. Maine General Health, 28 F.3d 78, 83 (1st Cir., 2000)(*citing* Bryan v. Visitors of the Univ. of Va., 95 F.3d 349, 351 (4th Cir., 1996)).

It is well settled that EMTALA is violated whenever a participating hospital discharges a patient with an emergency medical condition without rendering the services that are necessary to stabilize the patient's condition regardless of how the person arrived at the hospital or where within the walls of the hospital he or she may be when the hospital identifies the problem. Correa v. Hosp. San Francisco, 69 F.3d at 1190; López Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999).  If an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the condition. Correa v. Hosp. San Francisco, 69 F.3d at 1190.

Further, EMTALA is also violated if the hospital fails to perform an adequate screening to any patient that arrives to the emergency room and requests an examination.  The federal legislation was designed to assure that any person visiting the emergency room of a covered hospital is screened for an emergency medical condition and is stabilized if such condition exists. Guadalupe v. Negrón Agosto, 299 F.3d at 19.[1]  An appropriate medical screening has been defined as an examination designed to identify medical conditions. Guadalupe v. Negrón Agosto, 299 F.3d at 17;  Correa v. Hosp. San Francisco, 69 F.3d at1190.

However, EMTALA is not designed to ensure each emergency patient a correct diagnosis.

---

[1]  Section 1395 dd (a)provides that:
In the cause of action of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this sub-chapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether of not an emergency medical condition(within the meaning of subsection (e)(1) of this section) exists.

Gatewood v. Washington Healthcare Corp, 993 F.2d 1037, 1041 (D.C. Cir. 1991). When an exercise in medical judgment produces a given diagnosis, the decision to prescribe treatment responding to the diagnosis cannot form basis of an EMTALA claim of inappropriate screening Vickers v. Nash General Hospital, 78 F.3d 139, 144 (4th Cir., 1996).

A thorough review of plaintiffs' averments reveals that at paragraph 35 of the complaint allegations are made as to HIMA's medical personnel failure to evaluate the cause of the newborn's respiratory distress and subsequently preventing the respiratory failure. Although the EMTALA related allegations against HIMA are scanty, at a motion to dismiss stage of the proceedings and accepting as true all well-pleaded factual averments and indulging all reasonable inferences in the plaintiff's favor the Court cannot dismiss the EMTALA claims against HIMA. Calderon Ortiz v. Laboy Alvarado, 300 F.3d 60, 62-63 (1st Cir. 2002); SEC v.SG Ltd., 265 F.3d 42, 46 (1st Cir. 2001). The complaint avers that the newborn baby was transferred from HSPE to HIMA under a severe and delicate medical condition which required prompt and specific medical attention. However, at the time the baby was received at HIMA the description of the baby's condition [crucially ill r/o sepsis] may trigger a failure to an appropriate medical screening claim against HIMA independent and separate from a tort claim under local state law against HIMA's medical personnel. Accordingly, "if the facts contained in the complaint, viewed in this favorable light, justify recovery under any applicable legal theory", any order of dismissal shall be set aside. Calderon Ortiz, 300 F.3d at 63 (*quoting*, Conley v. Gibson, 355 U.S. at 45-46; Aulson v. Blanchard, 83 F.3d at 3). Therefore, HIMA's allegations that the Court does not have jurisdiction to entertain plaintiffs' local state law claims consequently are devoid of merit at this stage of the proceedings. The Court deems that HIMA's arguments are better suited for a motion for summary judgment.

Finally, HIMA's allegations that dismissal is warranted as to all the local state law claims because they are time barred are also to be denied. HIMA's sustains that the death of the newborn

baby occurred on May 12, 2003, and the instant complaint was filed on August 6, 2004. Therefore, according to Puerto Rico law, the one year statute of limitations for actions in tort against HIMA as a result of the "negligent medical care" and the subsequently death of the newborn baby elapsed on May 12, 2004. HIMA sustains that the record does not shows that the statute of limitations was tolled nor it is a fact known to HIMA that plaintiffs positively tolled said statute of limitations.

Puerto Rico's Civil Code provides that actions for obligations arising from fault or negligence prescribe one year from the moment the aggrieved person has knowledge of the injury; that is to say, the statute of limitations provides a one-year term for a tort action. 31 P.R. LAWS ANN., §5298 (1990). The term is interrupted by an extrajudicial claim, acknowledgment of the debt, or filing of a complaint. 31 P.R. LAWS ANN., §5303 (1990). Silva-Wiscovich v. Weber Dental Mfg. Co., 19 P.R. Offic. Trans. 550 (1987); Diaz de Diana v. A.J.A.S. Ins. Co., 10 P.R. Offic. Trans. 471, 474 (1980). However, the one (1) year period begins to run after the date of accrual of the claim. Espada v. Lugo, 312 F.3d 1, 3(1st Cir. 2002)("The time for prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the date on which they could have been instituted"); *see* also 31 P.R. LAWS ANN., § 5298.

The general rule is that the one-year "term does not start to run from the occurrence of the negligent act or damage, but from the moment the damage is known." Barretto Peat, Inc. v. Luis Ayala-Colon Sucrs., Inc., 896 F.2d 656, 658 (1st Cir. 1990)(*citing* Rivera-Encarnacion v. Estado Libre Asociado de P.R., 13 P.R. Offic. Trans. 383, 385 (1982). Notice or knowledge of the injury exists when there are "some outward or physical signs through which the aggrieved party may become aware and realize that he or she has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed". Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997).

Plaintiffs counters by stating that on April 23, 2004, that is, twenty days prior to the elapsing

of the statutory term to file a tort claim in the instant case, counsel for plaintiffs sent extrajudicial claim letters to all potential defendants including HIMA. The expressed purpose of the letter was to toll the statute of limitations against said defendants. Attached to plaintiffs' opposition is a copy of the returned receipt addressed to HIMA and to each and every one of the instant co-defendants.

It is well known that the one year statute of limitations provided by local state law may be tolled under certain circumstances. 31 P.R. Laws Ann. §5303.[2] An extrajudicial demand is one of said circumstances however, to have the tolling effect, the same must meet certain requirements. Article 1873 of the Puerto Rico Civil Code governs the extrajudicial interruption of the limitations period. Diaz de Diana v. A.J.A.S. Ins. Co., 10 P.R.Off.Trans., at 474; Tokyo Marine and Fire Ins. v. Perez & Cia.,142 F.3d 1, 4 (1st Cir., 1998); 31 P.R. Laws Ann. §5303. Extrajudicial tolling, pursuant to Article 1873, restarts the statute of limitations on the date the extrajudicial claim is made. Id. However, to effectively toll the statute of limitations said extrajudicial claim has to be made before the statute of limitations expires, the same must be performed by the holder of the right to the action whose limitation period is sought to be tolled, the means employed to make the claim must be adequate and there should be identity between the right claimed and the right affected by the statute of limitation. Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 567(1995); 38 *P.R. Off. Trans*. __; Diaz de Diana v. A.J.A.S. Ins. Co., 10 P.R.Off.Trans., at 474. Should the statute of limitations be effectively interrupted, the full period begins anew. Tokyo Marine and Fire Ins, 142 F. 3d at 4. The plaintiff bears the burden of proving that the statute of limitations has been tolled. Id. Finally, the interruption of the tolling period against one co-defendant tolls the period for all defendants who are jointly liable. Tokyo Marine and Fire Ins 142 F. 3d at 4; Arroyo v. Hospital de la Concepcion 130 D.P.R. 596, 607-608 (1992).

---

[2] "Prescription of the actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor and by any act of acknowledgment of the debt by the debtor."

The Court concludes that the letters sent by plaintiffs to all defendants are sufficient to show that the statute of limitations was tolled by means of an extrajudicial claim letter as allowed by local law. At a motion to dismiss stage of the proceedings, the Court is convinced that plaintiffs have proffered sufficient facts which warrants all reasonable inferences in plaintiff's favor. Viqueira v. First Bank 140 F.3d at 16. Further, since a motion to dismiss standard of review states that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, Conley v. Gibson, 355 U.S. at 45-46, the Court deems that plaintiffs have brought forth sufficient facts which prove that they are entitled to relief. Conley v. Gibson, 355 U.S. at 78. Thus, the facts show that the plaintiffs may have an applicable legal theory under which recovery is warranted and hence the request for dismissal must be denied. Calderon Ortiz, 300 F.3d at 63; quoting, Conley v. Gibson, 355 U.S. at 45-46; Aulson v. Blanchard, 83 F.3d at 3.

## CONCLUSION

For the reasons stated herein, the Court hereby **DENIES** co-defendant Hospital Interamericano de Medicina Avanzada (HIMA) *Motion to Dismiss* (Docket No. 22). Further, HIMA's *Motion Requesting Stay of Discovery Pending Disposition of Motion to Dismiss* (Docket No. 31) is hereby **MOOTED**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 22ND day of April 2005.

                **S/DANIEL R. DOMINGUEZ**
                **DANIEL R. DOMINGUEZ**
                **U.S. DISTRICT JUDGE**